**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**J. CHRISTOPHER'S RESTAURANTS, LLC, and J. CHRISTOPHER'S IP, LLC,**

**Plaintiffs,**

**vs.** **Case No. 8:09-CV-2422T-27MAP**

**WILLIAM KRANICH and J. CHRISTOPHER'S TAMPA, INC.,**

**Defendants.**
_____________________________________/

**ORDER**

**BEFORE THE COURT** are (1) Defendants' Verified Motion to Dismiss for Failure to State a Cause of Action upon Which Relief Can Be Granted (Dkt. 21), to which Plaintiffs have responded (Dkt. 24) and (2) Plaintiffs' Motion for Partial Summary Judgment (Dkt. 20), to which Defendants failed to respond. Upon consideration, the motions are DENIED.

***Background***

The First Amended Complaint, which is verified by Sam Haddock, President of Plaintiffs J. Christopher's Restaurants, LLC ("JCR") and J. Christopher's IP, LLC ("JCIP"), includes the following averments. The J. Christopher's restaurants franchise system was started in 1996 by Jeffrey McCann and Christopher Brogdon (together, the "Founders"). Dkt. 17 ¶ 10. The Founders opened several J. Christopher's restaurants in the Atlanta, Georgia, area and entered into some license agreements to operate J. Christopher's restaurants. *Id.* In August, 2007, Plaintiffs acquired from the Founders the right to operate and franchise the J. Christopher's system and acquired the J.

Christopher's marks. *Id.* ¶ 11.

At the time of the acquisition, there was a J. Christopher's restaurant in Tampa (the "Tampa restaurant") operating without a written license agreement. *Id.* ¶ 13. Plaintiff JCR was told that the Founders had previously granted Defendant William Kranich permission to open a J. Christopher's restaurant in Tampa. *Id.*

The arrangement between Kranich and the Founders was never formalized or reduced to writing. *Id.* ¶ 14. Plaintiffs allege on information and belief that neither Kranich nor Defendant J. Christopher's Tampa, Inc. ("JCT"), the corporation Kranich formed to operate the Tampa restaurant, ever paid royalties or any other consideration to the Founders for the use of the J. Christopher's marks. *Id.*

In connection with the 2007 acquisition, JCIP entered into an August 7, 2007 Intellectual Property License Agreement (the "IP Agreement" [Dkt. 17-7]) with J. Christopher's, Inc., the corporation through which the Founders operated. *Id.* ¶ 26. Kranich is not a party to the IP Agreement, and the IP Agreement expressly provides that it confers no rights on any third party. IP Agreement § 16. However, the IP Agreement acknowledges that J. Christopher's, Inc.

> is already the licensor for two licensees that use [the J. Christopher's marks, including registered service mark No. 3180270, and related intellectual property] in connection with their operation of the already-existing "J. Christopher's" restaurants (the "**Existing Units**") as listed on Exhibit B to this Agreement (the "**Operational Licenses**").

Dkt. 17-7 at 1. Exhibit B to the IP Agreement identifies the Tampa restaurant as an "Operator/Licensee." *Id.* at 6.

In accordance with J. Christopher's, Inc.'s desire for "a license to enable it to have the right to serve as licensor with respect to the Existing Units under the Operational Licenses," *id.* at 1, the

IP Agreement grants J. Christopher's, Inc. a non-exclusive license "to act as the 'licensor' under the Operational Licenses with respect to the Existing Units." *Id.* § 1. The IP Agreement provides that it will remain in effect until the soonest of (a) ten years from its effective date, (b) the date when the last restaurant operating under an Operational License has closed or been terminated, or (c) the date when the licensee for the last Existing Unit signs "a new form of franchise agreement with JCR." *Id.* § 5. The IP Agreement further provides that, upon termination of the IP Agreement, JCIP has the right to assume all Christopher's, Inc.'s rights and obligations under the Operational Licenses then in effect. *Id.* § 7(a). The IP Agreement further provides that, if an Existing Unit accepts JCR's offer of a franchise agreement, the corresponding Operational License will be terminated. *Id.* § 11.

The Amended Complaint acknowledges that pursuant to the IP Agreement, J. Christopher's, Inc. was authorized to license the J. Christopher's marks to Kranich. Dkt. 17 ¶ 26. However, Haddock avers that no license ever existed between *J. Christopher's, Inc.* and Kranich or JCT. *Id.* ¶ 27. Contrary to Plaintiffs' contention (Dkt. 24 at 3), Haddock does not aver (at any rate not clearly) that no license ever existed between *the Founders* and Kranich or JCT.

The parties to the IP Agreement entered into a License Termination Agreement dated April 30, 2009 (Dkt. 17-8), in which they agreed to terminate the IP Agreement. *See* Dkt. 17 ¶ 30; Dkt. 17-8.

JCR and the Founders had numerous discussions with Kranich in an effort to either formalize "the license arrangement" or stop Defendants' use of the J. Christopher's marks. Dkt. 17 ¶ 15. In a January 30, 2009 message (Dkt. 17-1), JCR demanded that Kranich either sign a franchise agreement or cease use of the marks and "de-identify" the Tampa restaurant. *Id.*

In July, 2009, Kranich informed JCR that he did not wish to become a franchisee but would

instead cease using the marks and "de-identify" the Tampa restaurant. Dkt. 17 ¶ 16. In a July 8, 2009 message (Dkt. 17-2), JCR afforded Kranich 45 days to "de-identify" the restaurant and attached a "de-identification" checklist. Dkt. 17 ¶ 16. In a July 20, 2009 message, Haddock acknowledged Kranich's "confirmation that you are in the de-identification process." Dkt. 17-3 at 1. Defendants failed to meet the 45-day deadline. Dkt. 17 ¶ 17.

In an August 24, 2009 email (Dkt. 17-4), JCR reminded Kranich of the deadline, requested a status report on the de-identification, and attached a photograph showing the Tampa restaurant displaying the J. Christopher's mark. *Id.* ¶ 17.

In a September 9, 2009 letter (Dkt. 17-5), counsel for JCR demanded that Kranich cease using the marks (including marks registered with the U.S. Patent and Trademark Office under Nos. 3,580,120 and 3,601,614) and "de-identify" the restaurant by September 17, 2009. Dkt. 17 ¶ 18; Dkt. 17-5.

In a September 21, 2009 email (Dkt. 17-6), Kranich admitted that signs bearing the J. Christopher's name were still on display at the Tampa restaurant but stated that if they were not changed soon he would cover the J. Christopher's name with banners. Dkt. 17 ¶ 19; Dkt. 17-6. Kranich further admitted that the Tampa restaurant's cash register system (which generated receipts bearing the J. Christopher's name and used proprietary menu names and software) had not yet been changed. *Id.* However, Kranich represented that menus and uniforms had been changed and he promised to "keep [JCR] informed as we progress." *Id.*

Defendants took no further steps to de-identify the restaurant. *Id.* ¶ 20. Rather, Defendants have taken steps to "re-identify" the restaurant as a J. Christopher's restaurant by reinstating the use of the J. Christopher's marks. *Id.* Defendants have not removed or covered J. Christopher's signs

at the Tampa restaurant, they instruct wait staff to wear uniforms bearing the J. Christopher's name and logo, and they provide customers with menus bearing the J. Christopher's name and logo. *Id.* ¶¶ 21-22. When customers charge a meal to a credit or debit card, the charge states that it is from J. Christopher's, and Defendants continue to identify the Tampa restaurant as J. Christopher's over the telephone. *Id.* ¶¶ 22-24.

Plaintiffs assert trademark infringement and unfair competition claims under Sections 32(1) 43(a) of the Lanham Act, 15 U.S.C. §§ 15 U.S.C. § 1114(1), 1125(a) (Counts I-II) as well as claims for unfair competition under Florida law (Count III), fraud (Count IV), breach of contract (Count VI), unjust enrichment (Count VII), and for violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq*. (Count V). The Amended Complaint seeks injunctive and declaratory relief, damages, attorneys' fees and costs.

***Procedural History***

Plaintiffs served the initial complaint on February 23, 2010. (Dkt. 14-1, 14-2). Although Defendants appeared through counsel on March 15, 2010 (Dkt. 11), Defendants failed to respond to the complaint within the time required by Fed. R. Civ. P. 12(a)(1). On June 29, 2010, Plaintiffs filed the Amended Complaint, and Defendants failed to respond within the time required by Fed. R. Civ. P. 15(a)(3).

On August 20, 2010, Plaintiffs moved for partial summary judgment on Counts I-III, VI, and VIII (Dkt. 20). Defendants failed to respond to the motion as required by Local Rule 3.01(b). However, on September 9, 2010, Defendants filed a Verified Motion to Dismiss for Failure to State a Cause of Action upon Which Relief Can Be Granted (Dkt. 21). The motion contends that the Amended Complaint fails to state a claim because Defendant J. Christopher's Tampa, Inc. was

granted and still holds a valid license to use Plaintiffs' marks, "as noted in paragraph 11 of the Plaintiff[']s Complaint and acknowledged in the [IP Agreement], exhibit 7 of the Fi[r]st Amended Complaint." Dkt. 21 at 1.[1] The motion also contends that Defendant Kranich should be dismissed from this lawsuit because he does *not* hold the license to use Defendants' marks. *Id.*

After Defendants failed to file a response to Plaintiffs' motion for summary judgment within the time required by Local Rule 3.01(b), the Court on September 21, 2009 directed Defendants (Dkt. 23) to show cause in writing within five days why the motion should not be granted and to provide a legal memorandum that complied with Local Rule 3.01(b) and attached any pertinent documentary materials pursuant to Fed. R. Civ. P. 56(e). The order warned that Defendants' failure to comply would result in the Court taking the motion for summary judgment under advisement and that properly supported facts in the motion would be deemed established as true. Defendants failed to comply.

Although Defendants have made no attempt to show excusable neglect for their failure to timely respond to the Amended Complaint, *see* Fed. R. Civ. P. 6(b)(1)(B), on September 30, 2010, Defendants filed their Verified Answer (Dkt. 25). The Verified Answer asserts as an affirmative defense that JCT "has a valid license to operate as noted in paragraphs 10-14 of the Plaintiff[']s First Amended Complaint and the Exhibit attached thereto." Dkt. 25 ¶ 3. Additionally, the answer asserts that Defendant Kranich should be dismissed because he has no license to use Defendants' marks. *Id.*

***Standard***

[1] Paragraph 11 of the initial complaint alleges that the Founders "entered into a limited number of license agreements, including a license royalty of 4% of sales to operate J. Christopher's restaurants." Dkt. 1 ¶ 11.

Summary judgment is proper if, following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c)(2). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323-24.

The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. *Id.*

A verified pleading may be considered on summary judgment to the extent that it is based on personal knowledge and otherwise satisfies the requirements of Fed. R. Civ. P. 56(e)(1). *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *cf. Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992). However, conclusory averments in a verified pleading are disregarded. *See*

*Wells v. Cramer*, 262 F. App'x. 184, 187 (11th Cir. 2008); *Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1019 (10th Cir. 2002).

***Discussion***

A trademark infringement claim based on a federally registered mark under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), requires proof: (1) that Plaintiff has a valid mark, (2) that, without authorization, Defendants used the mark or a colorable imitation thereof in commerce in connection with the sale or advertising of goods or services, and (3) that Defendants used the mark in a manner likely to confuse consumers. *See North Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008).

Section 43(a) of the Lanham Act creates a federal cause of action for unfair competition by prohibiting the use in commerce of any designation likely to cause confusion (1) as to the user's "affiliation, connection or association" with another person or (2) as to "the origin, sponsorship, or approval of [the user's] goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a). "To establish a prima facie case of trademark infringement under § 43(a), a plaintiff must show '(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two.'" *Tana v. Dantanna's*, 611 F3d. 767, 773 (11th Cir. 2010) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997)).

"[W]here the trademark holder has authorized another to use its mark, there can be no likelihood of confusion and no violation of the Lanham Act if the alleged infringer uses the mark as authorized." *Segal v. Geisha NYC LLC*, 517 F.3d 501, 506 (7th Cir. 2008); *see also McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1307 (11th Cir. 1998). However, once the license has expired,

use of the formerly licensed trademark ordinarily constitutes infringement. *See Professional Golfers Ass'n of America v. Bankers Life & Cas. Co.*, 514 F.2d 665, 670 (5th Cir. 1975).[2] "In sum, the law is simple. If, as a matter of contract law, a service mark or trademark license has ended, the licensee has no right to continue use of the licensed mark. Any such use is without the trademark owner's consent and constitutes infringement." 4 McCarthy on Trademarks and Unfair Competition § 25:31 (4th ed. 2008).

Unfair competition claims under Florida law are analyzed in the same manner as a federal trademark infringement claim. *See Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003); *Investacorp, Inc. v. Arabian Inv. Banking Corp.*, 931 F.2d 1519, 1521 (11th Cir. 1999).

Although verified, Kranich's bare assertion that JCT "has a valid license to operate as noted in paragraphs 10-14 of the Plaintiff[']s First Amended Complaint and the Exhibit attached thereto" does not create a genuine issue of material fact. The assertion does not meet the detailed assertions in the Amended Complaint or provide any evidence as to the nature or duration of the alleged license. Moreover, Defendants' failure to oppose the remaining assertions in the verified Amended Complaint requires that those assertions, to the extent they satisfy Fed. R. Civ. P. 56(e)(1), be deemed established as true.[3]

---

[2] *See also Burger King Corp. v. Mason*, 710 F.2d 1480, 1492-93 (11th Cir. 1983) ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks. . . . Consumers automatically would associate the trademark user with the registrant and assume that they are affiliated."); *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F. Supp. 2d 914, 922 (C.D. Ill. 2000) ("The likelihood of confusion exits as a matter of law if a licensee continues to use marks owned by the licensor after termination of the license.") (citing *Mason*, 710 F.2d at 1492-93).

[3] Kranich's conclusory general denial of those allegations based on lack of knowledge does not present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Additionally, the qualified but general denial (by which Defendants represent that they cannot in good faith form a belief as to the truth of 68 of the

However, construed in the light most favorable to Defendants, the IP Agreement itself shows that, before Plaintiffs' 2007 acquisition of the Founders' rights and thus independently of the IP Agreement, JCT possessed a license (what the IP Agreement calls the "Operational License") to operate the Tampa restaurant using the J. Christopher's marks. Indeed, Plaintiffs concede that Kranich had an informal "license arrangement" with the Founders. Dkt. 17 ¶¶ 14-15. Without indicating the source of the averment, Haddock avers that this license arrangement was never formalized or reduced to writing. *Id.* ¶ 14.[4] That is, Haddock appears to suggest that, at most, Defendants formerly possessed an implied or oral license of indefinite duration. If so, JCR was likely entitled to terminate that license at will upon reasonable notice. *See Bunn-O-Matic Corp.*, 88 F. Supp. 2d at 922 ("A license containing no time frame is generally terminable at will."); *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 847 F. Supp. 18, 20 n.1 (E.D.N.Y. 1994) (stating that "[a]n agreement conferring a license to use a trademark for an indefinite time, whether oral, written or by implication, is terminable-at-will by the licensor" but noting that "such termination may require reasonable advance notice"); *Coach House Rest., Inc. v. Coach and Six Rest., Inc.*, 934 F.2d 1551, 1563 (11th Cir. 1991) ("Usually, an implied license is terminable at will."); *Birthright v. Birthright Inc.*, 827 F. Supp. 1114, 1135 (D.N.J. 1993) (since an implied license

---

Amended Complaint's 70 allegations, including, for example, the allegation that Defendants have taken the position in correspondence with Plaintiffs that they have a license to use the J. Christopher's marks, *id.* ¶ 25) does not comply with Fed. R. Civ. P. 8(b). *See* 5 Charles Alan Wright, *et al.*, Federal Practice and Procedure § 1262 (3d ed.) ("Normally, a party may not assert a lack of knowledge or information if the necessary facts or data involved are within his knowledge or easily brought within his knowledge."); *Fidelity and Guar. Ins. Co. v. Keystone Contractors, Inc.*, No. CIV.A. 02-CV-1328, 2002 WL 1870476, at *3 (E.D. Pa. Aug. 14, 2002) ("[Defendants'] attempts to deny sufficient knowledge or information on matters clearly within the scope of their knowledge are so blatantly evasive as to be ineffective as denials.").

[4] Haddock's assertions regarding the former relationship between Defendants and the Founders appear to be largely based on inadmissible hearsay, *see* Dkt. 17 ¶ 13, or on information and belief, *see id.* ¶ 14.

is terminable at will, the licensor could properly terminate the license and therefore end the licensee's right to use the mark). However, the scant record evidence concerning the Operational License does not unambiguously indicate its nature or terms and therefore does not clearly show Plaintiffs' authority to terminate the Operational License.

In sum, as the undisputed record evidence does not clearly show that Defendants' current use of the marks at issue is unauthorized, Plaintiffs are not entitled to summary judgment as to Counts I-III. As to Count VI, although an agreement to refrain from suit can constitute legally adequate consideration, *see Matey v. Pruitt*, 510 So. 2d 351, 353 (Fla. 2d DCA 1987), Plaintiffs' evidence does not unambiguously show that Kranich agreed to cease use of the marks in exchange for an agreement by Plaintiffs' to refrain from taking legal action or unambiguously establish an oral contract with definite terms, *see W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 300 (Fla. 1st DCA 1999) (to establish a claim for breach of an oral contract, a plaintiff must "demonstrate that the parties mutually assented to 'a certain and definite proposition' and left no essential terms open.") (quoting *Jacksonville Port Auth. v. W.R. Johnson Enters., Inc.*, 624 So. 2d 313 (Fla. 1st DCA 1993)).

As to Count VIII, since the IP Agreement recognizes the Operational License and authorizes J. Christopher's Inc. to serve as licensor with respect to the Operational License, a declaratory determination that Defendants enjoy no rights under the IP Agreement would be premature.

Notwithstanding the absence of record evidence clearly showing the nature and duration of the Operational License, the Amended Complaint adequately *alleges* that Defendants do not now possess a valid license to use Plaintiffs' marks and do not possess any rights under the IP Agreement. Plaintiffs plausibly argue that Defendants' failure to timely answer the Amended Complaint

constitutes an admission of these allegations. *See* Fed. R. Civ. P. 8(b)(6); *Burlington N. R. Co. v. Huddleston*, 94 F.3d 1413, 1415 (10th Cir. 1996) ("By failing to submit an answer or other pleading denying the factual allegations of Plaintiff's complaint, Defendant admitted those allegations, thus placing no further burden upon Plaintiff to prove its case factually." ) (citing former Fed. R. Civ. P. 8(d), which is the equivalent of current Rule 8(b)(6)); 5 Federal Practice and Procedure § 1279 ("Under the first sentence of [former] Federal Rule 8(d), a failure to deny averments in a preceding pleading constitutes an admission of the facts alleged in those averments.... The sentence obviously applies when a required responsive pleading, such as an answer, has not been filed."). However, the proper response to that failure would have been to promptly move for entry of default and a default judgment pursuant to Fed. R. Civ. P. 55. *See* Local Rule 1.07(b). In the circumstances, the Court will provide Defendants a final opportunity to defend this action on the merits. Further disregard of deadlines and court orders will result in sanctions.

***Conclusion***

Defendants' Verified Motion to Dismiss for Failure to State a Cause of Action upon Which Relief Can Be Granted (Dkt. 21) is **DENIED**.

Defendants' Verified Answer (Dkt. 25) is **STRICKEN**. Within **eleven (11) days** of the date of this order, Defendants shall file an amended answer that complies with Rule 8(b).

Plaintiffs' Motion for Partial Summary Judgment (Dkt. 20) is **DENIED**.

**DONE AND ORDERED** in chambers this 13th day of October, 2010.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to: Counsel of Record